SO ORDERED.

Dated: April 23, 2024

Daniel P. Collins, Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF ARIZONA

| | | |
|---|---|---|
| In re | ) | Chapter 13 Proceedings |
| | ) | |
| **MARIE A. JACKSON,** | ) | Case No: 2:23-bk-05563-DPC |
| | ) | |
| Debtor. | ) | **UNDER ADVISEMENT ORDER RE HABITAT'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY** |
| | ) | |
| | ) | (Not for Publication – Electronic Docketing ONLY) [1] |

Before this Court is Prescott Area Habitat For Humanity's ("Habitat") Motion for Relief from the Automatic Stay ("Motion").[2] The Court held an evidentiary hearing on the Motion and then took this matter under advisement after the parties filed various post-hearing documents.[3] After considering the parties' briefs, exhibits, and testimony, this Court finds that Marie Jackson ("Debtor") did not file her chapter 13 petition in bad faith and her property is necessary for an effective reorganization. The Court hereby denies Habitat's Motion. The Court's analysis is set forth below.

## I. BACKGROUND

On October 22, 2020, Debtor executed a promissory note ("Note") secured by a deed of trust in connection with Debtor's purchase of the residential property located at

---

[1] This decision sets forth the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. ("Rule") 7052.
[2] Administrative case docket entry ("DE") 42; *See* DE 59, 60, and 61.
[3] DE 47

2121 Stellar Drive, Chino Valley, AZ 86323 (the "Property").[4] The Note contained a provision entitled "Shared Equity Rider" which provides that, if Debtor sells the Property within five years of the purchase date, all sales proceeds would belong to Habitat.[5] The Shared Equity Rider also states that if the Habitat secured claim is refinanced, Habitat shall still be entitled to the Shared Rider Amount. After Debtor defaulted on the Note, Habitat filed a Notice of Trustee's Sale and scheduled a private deed of trust foreclosure sale for May 18, 2023.[6] On May 17, 2023, Debtor filed her first chapter 13 bankruptcy petition ("First Bankruptcy Case").[7] After Debtor defaulted on her plan payments, Debtor's First Bankruptcy Case was dismissed on August 9, 2023.[8]

After the First Bankruptcy Case was dismissed, Habitat scheduled another trustee's sale to occur on August 16, 2023.[9] The morning of August 16, 2023, Debtor filed the instant chapter 13 bankruptcy petition ("Second Bankruptcy Case").[10] On August 21, 2023, Debtor moved to continue the automatic stay pursuant to 11 U.S.C. § 362(c)[11] which the Court granted on September 11, 2023.[12]

On December 27, 2023, Habitat filed the Motion arguing that the automatic stay should be lifted as to Debtor pursuant to §§ 362(d)(1) and (2) and as to the Property pursuant to § 362(d)(4).[13] Habitat argues that: (1) Debtor's repeated filings on the eve of foreclosure constitutes "cause" to lift the stay; (2) according to the Shared Equity Rider provision, Debtor has no equity in the Property; (3) the Property is not necessary for an effective reorganization because the Debtor's chapter 13 plan is not feasible; (4) Debtor attempted to sell the Property in violation of the Shared Equity Rider provision and this

---

[4] DE 42 at 2.
[5] Trial Exhibit 1 at page 7.
[6] DE 42 at page 2.
[7] 3:23-bk-03264-DPC DE 1.
[8] 3:23-bk-03264-DPC DE 28.
[9] DE 42 at page 3.
[10] DE 1; DE 42 at page 3.
[11] Unless stated otherwise, all sections refer to Title 11 of the United States Code.
[12] DE 8; DE 24.
[13] DE 42.

fact, combined with Debtor's repeated bankruptcy filings on the eve of foreclosure, constitute a "scheme to delay, hinder, or defraud" Habitat.[14]

In her response ("Response"),[15] Debtor argues no cause exists to lift the automatic stay because she filed a good-faith chapter 13 plan to cure her defaults on the Note and maintain current payments on her obligation to Habitat.[16] Debtor also argues that she is current on plan payments and Habitat is adequately protected by an equity cushion in the Property.[17] Debtor argues that, despite the terms of the Shared Equity Rider, the Property's value is undisputedly more than Habitat's lien and, moreover, this Property is necessary for an effective reorganization.[18] Finally, Debtor argues that she has not engaged in a "scheme to delay, hinder, or defraud" Habitat as she has proposed a good-faith plan to cure defaults and is current on plan payments.[19]

At the preliminary hearing on the Motion, the Court heard from both parties, found disputed issues of material fact, and set the matter for an evidentiary hearing for April 4, 2024 (the "Evidentiary Hearing").[20] At the Evidentiary Hearing, the Court heard testimony from Bruce Rosenberg, Executive Director of Habitat, who testified about the mission of Habitat. Mr. Rosenburg also explained, among other things, that the purpose of the Shared Equity Rider provision was to prevent people from flipping properties acquired from Habitat and benefiting from the reduced prices and favorable loan terms offered by Habitat to those in need. The Court also heard testimony from Ross Mumme, attorney for chapter 13 trustee Edward Maney. Mr. Mumme testified that Debtor was current on her plan payments and conduit payments had been made to Habitat. Finally, Debtor testified that her financial difficulties are the result of several serious family

---

[14] DE 42 at pages 4–6.
[15] DE 46
[16] DE 46 at page 2.
[17] DE 46 at page 2.
[18] DE 46 at page 2.
[19] DE 46 at page 2.
[20] DE 53

matters and her health conditions including a heart transplant. Debtor also testified that her health is doing much better now and that she has been able to pick up additional work hours and has earned certain financial "bonuses." Debtors testimony concerning her current income and expenses was less than crystal clear.

At the conclusion of the Evidentiary Hearing on Habitat's Motion, the Court found that it had heard no evidence supporting the allegations that Debtor had engaged in a scheme to delay, hinder or defraud Habitat. The Court denied the Motion as to § 362(d)(4).[21] The Court also found that Debtor had no realizable equity in the Property.[22] The Court directed counsel for Habitat to provide an updated arrearage calculation on the Note as of the commencement of the Second Bankruptcy Case.[23] The Court also directed counsel for Debtor to provide Debtor's every paystub since the petition date and to amend Schedule J to address discrepancies noted by Debtor in her testimony.[24] The Court encouraged Mr. Rosenberg to have a discussion with the Debtor immediately after the Evidentiary Hearing. After the requested documents were filed (and when it appeared the parties were not going settle this matter), the Court took this matter under advisement.[25]

## II. JURISDICTION

The Court has jurisdiction over this bankruptcy case and the issues described in this Order pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(G).

## III. ISSUES

Whether Debtor filed her chapter 13 petition in bad faith such that cause exists to lift the automatic stay under § 362(d)(1). Whether the Property is necessary for the Debtor's effective reorganization under § 362(d)(2).

---

[21] DE 57 at page 3.
[22] DE 57 at page 3.
[23] DE 57 at page 3
[24] DE 57 at page 2.
[25] DE 57 at page 3.

## IV. ANALYSIS

### A. STAY RELIEF UNDER § 362(d)(1).

Given the Court's ruling at the Evidentiary Hearing denying the Motion as to § 362(d)(4), the remaining possible avenues for stay relief in favor of Habitat are found at §§ 362(d)(1) and (2). Section 362(d)(1) states that "the court shall grant relief from the stay . . . for cause." When a debtor files their petition in bad faith, "cause" may exist to lift the stay.[26] To determine whether a debtor has filed a bankruptcy petition in bad faith, courts must look to the "totality of the circumstances."[27] Factors a court should consider when determining bad faith are: (1) whether the debtor misrepresented facts in the petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise filed the chapter 13 petition or plan in an inequitable manner; (2) the debtor's history of filings and dismissals; (3) whether the debtor only intended to defeat state court litigation; and (4) whether egregious behavior is present.[28] The Ninth Circuit has noted that there is no per se rule "bad faith" against multiple Chapter 13 filings.[29]

### B. STAY RELIEF UNDER § 362(d)(2).

Under § 362(d)(2), the court "shall" grant relief from the stay if "(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." At the Evidentiary Hearing, the Court found Debtor does not have realizable equity in the Property. Given this finding, the only remaining question under § 362(d)(2) is whether the Property is necessary to an effective reorganization of the Debtor.

---

[26] *In re Project Orange Assocs.*, LLC, 432 B.R. 89, 112 (Bankr. S.D.N.Y. 2010) (" Bad faith may be sufficient 'cause' to lift the stay.")
[27] *In re Eisen*, 14 F.3d 469, 470 (9th Cir. 1994).
[28] *In re Leavitt*, 171 F.3d 1219, 1224 (9th Cir. 1999).
[29] *In re Taylor*, 884 F.2d 478, 486 (9th Cir. 1989).

"[M]ost courts have held that in a Chapter 13 case, a debtor's home is necessary for an effective reorganization."[30] However, some courts have required a debtor to show no reasonable alternatives in the area in which a debtor resides.[31] Additionally, courts have held that, in order for the property to be necessary for an effective reorganization, there must be a reorganization in prospect meaning, the debtor's plan must be confirmable.[32] For a plan to be confirmable, it must be feasible.[33]

## V. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. § 362(d)(1)

Debtor filed both of her bankruptcy petitions on the eve of Habitat's foreclosure sale. At the Evidentiary Hearing, Debtor explained she had been working for some time trying to find a way to save her Property. She approached many different lenders, but each attempt resulted in her almost losing her Property. She was ultimately connected with Attorney Wright just a few days before Habitat's first foreclosure sale. After discussing the issues with Mr. Wright, Debtor determined that a bankruptcy petition would be in her best interest. Debtor testified that the First Bankruptcy Case was dismissed because she could not make the plan payments in addition to covering her ongoing bills. Debtor also testified that she is now earning more than she was during the First Bankruptcy Case. She is currently working more hours, qualifying her for "bonuses." Debtor testified and introduced through exhibits supporting her contention that her current income is sufficient to make the payments called for under her chapter 13 plan.

---

[30] *In re Elmore*, 94 B.R. 670, 677 (Bankr. C.D. Cal. 1988) ("A debtor's principal residence in a Chapter 13 case is virtually always necessary to an effective reorganization."); *see also, e.g., In re Smith*, 245 B.R. 622, 624–25 (Bankr. W.D. Mo. 2000) (finding home necessary for reorganization in Chapter 13 even though relief from stay had been granted on same property in a previous Chapter 7 case); *In re Parks*, 193 B.R. 361, 366 (Bankr. N.D. Ala. 1995) ("Nothing could be more related to an effective reorganization than the ability to keep and pay for [the debtors'] house.").

[31] *See In re Wilks*, 123 B.R. 555, 559 (Bankr. W.D. Tex. 1991); *but see In re McGrath*, 625 B.R. 774, 781 (Bankr. N. Mex. 2020) (the availability of other housing options is not the test).

[32] *See In re Brown*, 606 B.R. 348, 354 (E.D. Ark. 2019).

[33] *See* § 1325(a)(6).

Although Debtor did file two bankruptcy petitions on the eve of foreclosure, given the totality of the circumstances, the Court finds that Debtor did not file this Second Bankruptcy Case in bad faith. Debtor has shown that there has been a change in her financial circumstances which should enable her to succeed in meeting the commitments of her chapter 13 plan.

Habitat has not demonstrated that Debtor misrepresented facts in her Second Bankruptcy Case. Although corrections to Debtor's schedules were necessary, these mistakes did not prejudice Habitat. Rather, the uncontested evidence show that Debtor is on a stronger financial footing than previously disclosed in this Second Bankruptcy Case. Debtor's recent filings show average monthly income of $3,824.92 and monthly expenses of $1,635, leaving Debtor with disposable income of $2,189.92 per month. In Debtor's First Bankruptcy Case, she was only earning on average $2,648.83 per month with expenses of $1,345, leaving $1,303.83 in disposable income. Debtor now has $886 more per month in disposable income than she did in her First Bankruptcy Case.

No evidence has been submitted indicating that Debtor's bankruptcy was filed intending to defeat state court litigation, or that Debtor has engaged in any egregious behavior. Debtor is current on her plan payments and is working toward plan confirmation. Debtor explained numerous times that she is only trying to save her home and that she plans to be able to cure any default to Habitat through her plan. Debtor's reported current income and expenses suggest she should be able to succeed in these efforts. The Motion is denied as to § 362(d)(1).

### B.  § 362(d)(2)

To avoid stay relief under § 362(d)(2), the Property must be necessary for an effective reorganization. In *In re Elmore*, the debtors filed a chapter 13 bankruptcy principally to save the residence from foreclosure.[34] The court explained "[i]f the home is not saved, the Chapter 13 reorganization is not effective."[35] Similarly, the court in *In re Parks*, facing similar facts, stated "[n]othing could be more related to an effective

---

[34] 94, B.R. at 670.
[35] *Elmore*, 94, B.R. at 678.

reorganization than the ability to keep and pay for their house."[36] Here, as in *Elmore*, Debtor's primary goal in this bankruptcy is and has been to save the Property and continue living there. This home is certainly necessary to provide Debtor with a place to live so that she can continue to work to generate funds necessary to repay creditors.

Even if this Court were to adopt a tougher standard requiring the Debtor to demonstrate a lack of reasonable housing alternatives, Debtor would still prevail. Debtor testified that she previously paid $750 a month in rent before she moved into this Property. She also testified that she has looked for different places in the vicinity of the Property and to rent a studio apartment in Prescott Valley would cost $1,400 a month. This alternative is considerably more expensive than she is paying currently. No evidence contradicted Debtor's testimony at the Evidentiary Hearing.

At the Evidentiary Hearing, relying primarily on an income calculation shown in Exhibit E, Debtor testified that her income at the time of the petition of the Second Bankruptcy Case was $3,824.56. Debtor testified that she is currently earning more per hour and working more hours per week than during her First Bankruptcy Case. However, there was some confusion as to Debtor's current monthly income. Debtor also testified that her expenses totaled at most $2,420 per month but several of her expenses were likely lower. At the conclusion of the Evidentiary Hearing to clarify this confusion, the Court directed Debtor to file every paystub since the commencement of the Second Bankruptcy Case and to file an amended Schedule J showing updated monthly expenses. Debtor's paystubs since August 2023 show an average monthly income of $3,824.92. Debtor's paystubs from February 2, 2024, February 23, 2024, and March 29, 2024, confirm Debtor's testimony that she does receive "bonuses" when she works more hours – although less often than she suggested. Debtor's amended Schedule J shows monthly expenses totaling $1,635 per month.

At the Evidentiary Hearing, Habitat relied heavily on Exhibit 5 (Form 122C-1) which reflects that Debtor's gross monthly wages totaled $3,170.45. In determining whether Debtor can make plan payments, the better evidence is her paystubs since

---

[36] 193 B.R. at 366.

filing the Second Bankruptcy Case. These paystubs reveal Debtor's true current income. These paystubs indicate that Debtor's average post-bankruptcy monthly income totals $3,824.92. Given that Debtors monthly expenses are only $1,635, Debtor has $2,189.92 in disposable monthly income available for her chapter 13 plan payments. Debtor's plan presently calls for payments of $1,400/month but this amount was based on an estimated arrearages on the Note of only $9,000. In its filing on April 9, 2024, Habitat claims that pre-petition arrearages on the Note totaled $29,132.07.[37] Given that plan payments may need to cover an additional $20,132.07 in arrears, Debtor's plan payments may have to increase by as much as $335.53 ($20,132.07 divided by 60 months) to cover the full amount of the claimed pre-petition arrearage. Debtor's disposable income of $2,189.56 will be able to cover this amount.

The Court finds it is feasible for the Debtor to make plan payments of $1,735.53. Debtor's plan will need to be amended but, it appears to this Court that it is feasible for Debtor to make the presumed amended payment. There is, therefore, a reorganization in prospect. The Court denies the Motion as to § 362(d)(2).

## VI. CONCLUSION

The Court finds no cause exists to lift the stay. The Court further finds the Property is necessary for an effective reorganization of the Debtor's financial affairs. Habitat's Motion is hereby denied without prejudice.

**ORDERED**

**DATED AND SIGNED ABOVE.**

**To be Noticed through the BNC to:**
Interested Parties

---

[37] Debtor disputes this amount and has filed an objection not Habitat's Proof of Claim at DE 36. The Court is not making any determination as to the amount of Habitat's claim.